UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

      v.                                       Case No. 06-C-215

TOMAINE DAVIS,

        Defendant.

## RECOMMENDATION AND ORDER RE: DEFENDANT'S PRETRIAL MOTIONS

On September 12, 2006, a federal grand jury sitting in the Eastern District of Wisconsin returned a four-count indictment naming various individuals including Tomaine Davis ("Davis") as defendants. Not all defendants are charged in each of the four counts. Each of the defendants, however, is charged in Count One of the indictment with knowingly and intentionally conspiring to distribute controlled substances, to wit, 1 kilogram or more of heroin, all in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Count Two charges Davis and Lawrence Butler with knowingly and intentionally possessing with the intent to distribute heroin, all in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(C).

On June 21, 2007, Davis filed (1) a motion for a bill of particulars, (2) a motion to disclose confidential informants, (3) motion for discovery and to enlarge the time to file motions, (4) a motion for disclosure of informant's information, (5) a motion to dismiss Count Two as multiplicitous, (6) a motion for an order requiring the government to submit a *Santiago* proffer, (7) a motion for severance, (8) a motion to suppress Emeline White's statements, (9) a motion for disclosure of

404(b) evidence, and (10) a motion to suppress evidence obtained in the search of 3369 N. Palmer

Street. On July 9, 2007, the government filed its response to the defendant's motions, and on July

13, 2007, the defendant filed his reply. Consequently, the defendant's motions are ready for

resolution.

## I.  DISCUSSION

### A.  Motion for a Bill of Particulars

Davis has moved the court for a bill of particulars. Specifically, Davis argues that the court

should order the government to provide the following information in a bill of particulars.

> 1.  Was Tomaine Davis a co-conspirator who transported heroin from within the Eastern District of Wisconsin?
>
> 2.  Was Tomaine Davis a co-conspirator who transported heroin from sources outside the Eastern District of Wisconsin?
>
> 3.  Was Tomaine Davis a regular street level dealer to whom drugs were fronted as identified in the indictment?
>
> 4.  Identify the various residences that the co-conspirators stored, packaged, or sold heroin as identified in the indictment.

(Mot. (dkt. #122) at 1.)  In his initial brief, Davis did not present any arguments in support of his

motion for a bill of particulars. In his reply brief, the defendant argues that "[w]ithout a bill of

particulars the defendant cannot properly prepare a defense."  (Reply Br. at 1.)  According to the

defendant, the "government's open file policy is as unhelpful as a library without a card catalog. The

defendant is not claiming the lack of existence of information; he is claiming that he cannot obtain

the information necessary to present a defense without guidance as to what exactly the government

intends to prove as to him."  (Reply Br. at 2.)  In its response, the government argues that the

discovery provides sufficient information regarding Davis's involvement in the conspiracy and that

2

the indictment and discovery provide a sufficient basis from which the defendant can fashion an appropriate trial defense.

Rule 7(f) of the Federal Rules of Criminal Procedure allows, in conjunction with the issuance of an indictment, for the filing of a bill of particulars. *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991); Fed. R. Crim. P. 7(f). A bill of particulars more precisely describes the illegal activities in which the defendant allegedly engaged, *Canino*, 949 F.2d at 949, and provides the defendant with information sufficient to prepare an adequate defense to the charges and to protect himself against double jeopardy. *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991).

In determining whether a bill of particulars is required, the court should consider the following factors: (1) whether the indictment states all of the elements of the offense charged; (2) whether the indictment sufficiently informs the defendant of the nature of the charge so that the defendant may prepare a defense; and (3) whether the defendant may plead the judgment as a bar to any later prosecution for the same offense. *United States v. Serola*, 767 F.2d 364, 369 (7th Cir. 1985). An indictment satisfies this standard by setting forth the elements of the offense charged, the time and place of the defendant's conduct which violated that offense, and citation to the statutes allegedly violated. *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003).

However, "a defendant has no right to discover, through a bill of particulars, the evidentiary details of the government's case." *United States v. Brock*, 863 F. Supp. 851, 867 (E.D. Wis. 1994). Nor is a bill of particulars intended to be used to reveal the theory of the government's case. *Glecier*, 923 F.2d at 502. Furthermore, "a bill of particulars is not required when information necessary for a defendant's defense can be obtained through 'some other satisfactory form.'" *Canino*, 949 F.2d at 949 (quoting Wright, *Federal Practice and Procedure: Crim.2d*, § 129, at 436-38 (1982)). For

3

example, "the 'open-file' policy is an adequate 'satisfactory form' of information retrieval, making the bill of particulars unnecessary." *Id.*

Here, the indictment states all of the elements of the offenses charged, the approximate time and place of the defendant's conduct that constituted such offense, and provides citations to the statutes allegedly violated. Thus, the indictment sufficiently informs the defendant of the nature of the charges against him. Furthermore, the government is complying with its open file policy in this case, which gives the defendant full access to the evidence in the government's possession as set forth in Crim. L. R. 16.1, and further reduces the need for a bill of particulars. *See Canino*, 949 F.2d at 949. Thus, Davis has already received (and will continue to receive) the information and materials identified in Crim. L. R. 16.1. Indeed, the bills of particulars sought by Davis would essentially identify the specific facts that the government intends to use to prove its case against him. This is not the purpose of a bill of particulars.

To be sure, Davis is not asserting that the information provided by the government pursuant to its open-file policy is insufficient. Rather, Davis's argument appears to be that a bill of particulars is necessary because it would provide a sort of "index" to the discovery provided pursuant to the government's open file policy. In my opinion, this is not the purpose of a bill of particulars. Simply put, I am persuaded that the information provided in the indictment and through the discovery pursuant to the government's open file policy is sufficient to allow Davis to prepare an adequate defense. Consequently, the defendant's motion for a bill of particulars will be denied.

**B. Motion for Disclosure of Confidential Informants**

Davis has moved the court for an order compelling the government to disclose the identity of the confidential informants whose statements were produced on pages 1 through 51 of the

4

discovery materials. (Mot. (dkt. #123) at 1.) In support of this motion, the defendant argues that he cannot adequately prepare a defense without the identities of these confidential informants because "the only information linking [him] to these charges are the CI statements rather than physical evidence." (Hall Aff. (dkt. #123-2.)). In response, the government asserts that the government will disclose the identity of the confidential informants thirty (30) days prior to trial.

It is well-established that the government has a limited privilege to withhold the identity of a confidential informant from a criminal defendant. *Roviaro v. United States*, 353 U.S. 53, 60 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59.

As established in *Rovario*, when determining whether to compel disclosure of an informant's identity, the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. Under this balancing test, the privilege will not apply "[w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused." *Id.* at 60-61. And, the burden is on the defendant to establish that disclosure is "relevant and helpful to [his] defense" or "essential to fair determination of a cause." *United States v. Jefferson*, 252 F.3d 937, 941 (7th Cir. 2001); *see also United States v. Bender*, 5 F.3d 267, 270 (7th Cir. 1993) (where the public interest in protecting the free flow of information is strong, the defendant must demonstrate a "genuine need" for disclosure). Furthermore, if a defendant meets this burden, the government's obligation to disclose the identity

5

of the informant does not hinge on whether the witness will testify at trial. *See Banks v. Dretke*, 540

U.S. 668, 697 (2004).

To be sure, the government often seeks to maintain the anonymity of an informant out of a

concern for his or her safety. This is especially true where the defendants have been charged with

a drug-related offense. As the Seventh Circuit Court of Appeals noted in *United States v. Bender*:

"Understandably, not many people want to become police informants in light of the violence within

the drug subculture. Drug dealers are not known for treating informers with compassion." 5 F.3d

at 270.

Moreover, "'[w]hen the informant is a mere tipster, rather than a participant or an eye witness

to the event in question, disclosure will not be required.'" *Id.* (quoting *United States v. Andrus*, 775

F.2d 825, 842 (7th Cir. 1985)). In *Bender*, the Seventh Circuit held that the informant "was not a

transactional witness, that is, he or she was not an active participant in the investigation leading to

arrest." 5 F.3d at 270. Rather, the informant was a "tipster." Relying upon the fact that the

"criminal activity the informant had witnessed did not constitute the charges against Bender," the

court held that disclosure of the tipster's identity was not required. *Id.* If, however, the informant

is "the sole participant, other than the accused, in the transaction charged," and "[is] the only witness

in the position to amplify or contradict the testimony of government witnesses," the informant's

identity must be disclosed. *Rovario*, 353 U.S. at 64; *see id*. at 55 (stating that the defendant in

*Rovario* engaged in a one-on-one transaction with the informant, and thus, the informant "had taken

a material part in bringing about the possession of certain drugs by the accused, had been present

with the accused at the occurrence of the alleged crime, and might be a material witness as to whether

the accused knowingly transported the drugs as charged").

6

Simply put, I am not satisfied that the confidential informants whose statements were produced on pages 1 through 51 of the discovery materials were "active participants" in the charged conduct, such that the government's privilege should be overcome. Indeed, the defendant has not presented any evidence from which the court could determine whether the confidential informants at issue were transactional witnesses or mere "tipsters." Thus, I am not persuaded that immediate disclosure of the identities of these confidential informants is warranted.

Consequently, and for all of the foregoing reasons, the defendant's motion to disclose the identity of confidential informants will be granted in part and denied in part. More precisely, and as ordered in the court's April 16, 2007 Recommendation and Order, the government will be ordered to disclose the identities of the confidential informants that it intends to call as witnesses in its case-in-chief at trial no later than thirty (30) days prior to trial. In all other respects, the defendant's motion will be denied.

## C. Motion for Discovery and for Additional Time to File Motions

Davis has also filed a motion for an extension of time to file pretrial motions. Specifically, Davis requests that he be granted an extension of time to file any additional motions regarding a search warrant for cellular phones. In its response, the government asserts that the discovery regarding the search of the cellular phones would be provided to defense counsel that week (i.e., the week of July 9, 2007). In light of the foregoing, the defendant's motion for an extension of time to file any pretrial motions will be denied as moot. As of today's date, Davis's counsel has not sought to file any additional pretrial motions regarding the search warrant for the cellular phones, and thus, presumably, no such motions will be filed.

7

**D. Motion for Informant's Information**

Davis has moved the court for an order "requiring the government to disclose to the defense any promises, rewards or inducements made by the Government or its agents to any witnesses interviewed by the Government or its agents in regards to this case." (Mot. (dkt. #125) at 1.) In response, the government has agreed to "disclose all impeachment material relating to these witnesses, including prior criminal convictions, statements of all promises, rewards, inducements, or consideration pursuant to *Brady* and make inquiries of other impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1970)" thirty (30) days before trial. In his motion, the defendant does not specifically state when he would like the government to reveal such information. However, in his reply brief, the defendant asserts that thirty days (30) days is an insufficient amount of time for the defendant to properly analyze any promises, rewards, and inducements made to the witnesses and then prepare a defense. (Reply Br. at 3.)

Simply put, I am satisfied that thirty days (30) days prior to trial is a sufficient amount of time for the defendant to review this information. Consequently, the defendant's motion will be granted in part and denied in part. The government will be ordered to disclose all impeachment material pursuant to *Brady* and *Giglio* thirty (30) days prior to trial.

**E. Motion to Dismiss Count Two as Multiplicitous**

Davis has moved the court for an order dismissing Count Two of the indictment "on the grounds that the court lacks jurisdiction over the defendant because the prosecution of the defendant in this case violates his rights guaranteed by the Double Jeopardy and Due Process of law provisions of the 5th Amendment." (Mot. (dkt. #127) at 1.) Specifically, Davis argues that Counts One and Two of the indictment are multiplicitous. According to Davis, because the government may seek to

8

use the alleged instance of possession with intent to distribute heroin that is charged in Count Two

of the indictment as the "overt act" committed in furtherance of the conspiracy charged in Count One

of the indictment, Counts One and Two are multiplicitous. In its response, the government asserts

that because Counts One and Two contain no elements in common, even if the proof of each count

overlaps, the counts are not multiplicitous. *See Blockburger v. United States*, 284 U.S. 299 (1932).

And, although the defendant filed a reply brief, in that brief he does not address this particular

motion.

> "Multiplicity is the charging of a single offense in separate counts of an indictment."
> Multiplicity in an indictment exposes a defendant to the threat of receiving multiple
> punishments for the same offense in violation of the Double Jeopardy Clause of the
> Fifth Amendment. "The traditional test of multiplicity determines whether each
> count requires proof of a fact which the other does not. If one element is required to
> prove the offense in one count which is not required to prove the offense in the
> second count, there is no multiplicity." "[W]e focus on the statutory elements of the
> charged offenses, not the overlap in the proof offered to establish them, because a
> single act may violate several statutes without rendering those statutes identical."

*United States v. Starks*, 472 F.3d 466, 468-69 (7th Cir. 2006) (citations omitted).

Here, Count One charges Davis with knowingly and intentionally conspiring to distribute

controlled substances, to wit, 1 kilogram or more of heroin, all in violation of Title 21 U.S.C. §§

841(a)(1), 841(b)(1)(A), and 846. The elements required for conviction under § 846 are (1) that the

conspiracy as charged existed, and (2) that the defendant knowingly became a member of the

conspiracy with an intention to further the conspiracy. Seventh Circuit Jury Instructions § 5.08. The

court also notes that proof that a conspirator committed an overt act in furtherance of the conspiracy

is not required to establish a violation of 21 U.S.C. § 846. *See United States v. Shabani*, 513 U.S.

10, 15 (1994). Count Two charges Davis with knowingly possessing with the intent to distribute

heroin in violation of 21 U.S.C. § 841(a)(1). And, the elements required for conviction under §

9

841(a)(1) are (1) the defendant knowingly or intentionally possessed a controlled substance, and (2) the defendant possessed the controlled substance with the intent to distribute it to another person. Seventh Circuit Jury Instructions 21 U.S.C. § 841(a)(1). Simply put, the elements required for conviction under 21 U.S.C. § 846 and § 841(a)(1) are different and thus, the court rejects Davis's argument that Counts One and Two are multiplicitous. Consequently, and for all of the foregoing reasons, it will be recommended that Davis's motion to dismiss be denied.

**F. Motion for *Santiago* Proffer**

Davis has moved the court for an order requiring the government to file a *Santiago* proffer establishing the admissibility of any co-conspirator declarations it intends to introduce at trial. *See United States v. Santiago*, 582 F.2d 1128, 1134-35 (7th Cir. 1978), *overruled on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987). Statements of co-conspirators are admissible if the government convinces the court, as a preliminary matter and by a preponderance of the evidence, that: (1) a conspiracy existed; (2) that the defendant and declarant were members of the conspiracy; and (3) that the proffered statements were made during the course of and in furtherance of the conspiracy. *Santiago*, 582 F.2d at 1134-35; *see also United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1994). The Seventh Circuit has set forth various procedures by which a district court may make the preliminary admissibility determination required by *Santiago*. *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991).

> In *Santiago*, we reaffirmed that the evidence as to these elements can be submitted to the court by way of proffer before trial, and the court can admit the statement(s) subject to its later determination that, based on all of the evidence admitted at trial, the Government has proved by a preponderance of that evidence all three requisite foundational elements. *Id.* at 1131. We also have approved other procedures a district court can employ in making the preliminary admissibility determination required by *Santiago*, including the following: the court can rule on each statement as it is elicited

10

based on the evidence the Government has adduced to that point; the court can, even in the absence of a pretrial proffer, conditionally admit the body of coconspirator's statements subject to the Government's eventual proof of the foundational elements (the penalty for not so proving being a possible mistrial); or the court can hold a "full blown" preliminary hearing to consider all evidence concerning the statements. *United States v. Andrus*, 775 F.2d 825, 836-37 (7th Cir. 1985) (we discouraged the latter as inefficient and potentially duplicative). By way of guidance in choosing among these methods, we have suggested that "a preferable procedure would be to at least require the government to preview the evidence which it believes brings the statements within the co-conspirator rule [before delving into the evidence at trial]." *United States v. Shoffner*, 826 F.2d 619, 630 (7th Cir.), *cert. denied sub nom. Stange v. United States*, 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987).

*Id.* (footnotes omitted).

In light of the foregoing, Davis's motion concerning the admissibility of co-conspirator declarations should be addressed by Judge Stadtmueller at or before trial. Indeed, it is the well-established practice of this district not to conduct a hearing, or even require a proffer, on these matters in advance of trial. Judge Stadtmueller may wish to discuss this motion and his procedures for resolving the same with counsel at the final pretrial conference. For these reasons, no ruling on the merits of Davis's motion for a *Santiago* proffer concerning alleged co-conspirator statements will be made by this court. Instead, this court defers entirely to Judge Stadtmueller on this issue.

## G. Motion for Severance

Davis has moved the court for an order severing his trial from the trial of his codefendants. In support of his motion, Davis argues that his defense, that is, that he is being charged in this indictment because his brother, Maurice Davis, is allegedly the leader and organizer of the conspiracy, and that the confidential informants who provided statements against Tomaine Davis are lying in order to avoid their own prosecution, is antagonistic to the defense of other codefendants. (Def.'s Mot. (dkt. #130) at 2.) Davis further argues that the evidence in this case is so voluminous

11

and complex, such that it would be virtually impossible for the jury to separate the evidence so that it could determine the individual guilt or innocence of each of the eight defendants. (Def.'s Mot. (dkt. #130) at 2.) In a related argument, Davis also asserts that there is a gross disparity of evidence between Davis and his codefendants, and thus, a joint trial would be highly prejudicial to Davis. In support of this argument, Davis asserts that he was incarcerated during various times during the alleged conspiracy, that there is no physical evidence linking him to the conspiracy, and that because there is evidence that his brother is the alleged leader or organizer of the conspiracy there may be confusion regarding what evidence applies to each family member. (Def.'s Mot. at 2-4.) The defendant also reserves the right to request severance, if at some later point, the government seeks to introduce any codefendant(s)' confessions at trial.

In response, the government argues that Davis has not shown an antagonistic defense with his codefendants such that the court should be compelled to sever his trial from that of his codefendants. The government further argues that although Davis argues that there is a disparity in the evidence against him as compared to some of his codefendants, he has not shown actual prejudice from such disparity.

Charges against multiple defendants may be brought in a single indictment if the defendants are alleged to have participated in the same series of acts or transactions which constitutes the offense. Fed. R. Crim. P. 8(b). Here, that requirement is met because the indictment alleges that each of the defendants participated in a conspiracy to distribute heroin. However, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

12

Nevertheless, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (citations omitted). In fact, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. "In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of single trial in which all facets of the crime can be explored once and for all." *United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002) (internal quotations omitted). A defendant must show that failure to sever would result in a deprivation of his right to a fair trial; "it is insufficient that separate trials would have given a defendant a better opportunity for an acquittal." *United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003) (internal quotations omitted). Stated another way, the movant has the burden of showing that failure to sever will result in actual prejudice.

Simply put, I am not persuaded that Davis has shown that failure to sever his trial will result in actual prejudice. As set forth above, Davis argues that severance should be granted because he will be presenting a defense that will be contrary to the defenses of his other codefendants. Defenses are mutually antagonistic when "acceptance of one defendant's defense will preclude the acquittal of the other defendant." *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006) (internal quotations omitted). And, here, the jury's acceptance of Davis's argument that he is being charged as a member of this drug conspiracy because his brother is the alleged leader of the conspiracy and

13

that the confidential informants are lying to avoid their own prosecution, is not mutually antagonistic of other defendants' alleged defenses. Indeed, Davis has not explained how his defense is antagonistic to any of the other alleged defenses of his codefendants. In any event, as the Seventh Circuit has stated, the "occurrence of mutually antagonistic defenses is generally not sufficient grounds to require severance." *United States v. Olson*, 450 F.3d 655, 677 (7th Cir. 2006). This is because "[m]utually antagonistic defenses are not prejudicial *per se*." *Id.* (citing *Souffront*, 338 F.3d at 831.)

Davis also argues that given the high number of defendants, the gross disparity in evidence, and varying degrees of culpability, as well as the fact that he may be prejudiced because his brother is named as the alleged leader of the conspiracy, the court should grant his motion for severance. In my view, a joint trial of all of the defendants in this action will not prevent the jury from making reliable judgments about the guilt or innocence of each individual defendant. In the end, I am not persuaded that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Consequently, and for all of the foregoing reasons, Davis's motion for severance will be denied. Finally, should the government seek to introduce at trial a confession by one of the codefendants, Davis may file a motion for severance instanter. That said, the court notes that in *United States v. Brooks*, the Seventh Circuit held that the admission of a non-testifying codefendant's redacted confession, i.e., one that does not facially incriminate any non-confessing codefendants, in combination with proper limiting jury instructions did not violate the non-confessing codefendant's right to confrontation. 125 F.3d 484, 501 (7th Cir. 1997).

14

**H. Motion to Suppress Emeline White's Statements**

Davis has moved the court for an order suppressing "for use as evidence any and all statements, oral or written, allegedly made by Emeline White who has died of AIDs in prison through no fault of the defendant, and whom the defendant did not have an opportunity to cross-examine." (Mot. (dkt. #131) at 1.) According to the defendant, the government does not oppose this motion and will identify any and all of Ms. White's statements. In its response, the government states that on July 13, 2006 Emeline White made a statement to law enforcement, and that since making such statement Emeline White has passed away. The government agrees that pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004) and *Davis v. Washington*, 126 S. Ct. 2266 (2006), it will not be able to introduce White's July 13, 2006 statement to law enforcement because the statement constitutes testimonial hearsay and White is unavailable to testify at trial. Thus, the government agrees that White's statement cannot be introduced at trial. Such being the case, the defendant's motion to suppress White's statement will be denied as moot.

**I. Motion for Disclosure Pursuant to Rule 404(b)**

Davis has also moved the court for an order requiring the government to give notice of any "uncharged misconduct evidence that the government intends to introduce at trial, as required by Fed. R. Evidence 404(b)." (Mot. (dkt. #132) at 1.) According to the defendant, the government has agreed to provide such information thirty (30) days prior to trial. In its response, the government asserts that it believes that there is little, if any, such evidence that would be offered against the defendant. Be that as it may, the government proposes that the court order the disclosure of the government's intent to introduce Rule 404(b) evidence no later than thirty (30) days prior to trial. Pursuant to Federal Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is admissible

15

for certain purposes "provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b).

In his reply, the defendant asserts that the government's disclosure of its intent to introduce Rule 404(b) evidence thirty (30) days prior to trial does not provide the defendant with sufficient time to properly prepare a defense. However, the defendant does not suggest what amount of time would provide him with sufficient time to prepare a defense. Simply put, I am satisfied that the disclosure of the government's intent to introduce Rule 404(b) evidence thirty (30) days prior to trial is reasonable. Thus, the government will be required to disclose, at least thirty (30) days prior to trial, any evidence of other crimes, wrongs, or acts that it intends to introduce at trial. Moreover, the court notes that the notice requirement of Rule 404(b) also extends to evidence the government plans to use during cross-examination and for rebuttal. Fed. R. Evid. 404(b) Advisory Committee Notes; *United States v. Antonelli*, 1998 WL 259526, *1 (N.D. Ill. 1998). And, while the government need not, of course, disclose evidence it does not yet intend to use, it should be aware of its continuing obligation to disclose other acts evidence in a timely fashion (including during trial, if that is when the need to introduce such evidence becomes apparent) in accordance with Rule 404(b).

In sum, Davis's motion for disclosure of certain evidence pursuant to Fed. R. Evid. 404(b) will be granted. The government will be ordered to give the defendant notice of any uncharged misconduct evidence that the government intends to use pursuant to Fed. R. Evid. 404(b) at least thirty (30) days prior to trial.

16

**J. Davis's Motion to Suppress Evidence Seized during the Search of 3369 N. Palmer Street**

Davis has moved the court to suppress all evidence seized on May 17, 2005 from the residence located at 3369 N. Palmer Street. Davis's motion is very similar to the motion to suppress filed by his codefendant, Butler. On April 16, 2007, this court recommended that Butler's motion to suppress the evidence seized during the search of the residence located at 3369 N. Palmer Street be denied. For all of the reasons set forth in this court's April 16, 2007 Recommendation and Order, and for the reasons which follow, it will be recommended that Davis's motion to suppress the evidence seized during the search of 3369 N. Palmer Street be denied.

Davis argues that when the officers "surrounded" the residence located at 3369 N. Palmer Street and an officer approached the front door of the residence and began knocking or pounding on the front door, the officers were in effect illegally "seizing" the residence and its occupants. (Def.'s Mot. (dkt. #133) at 5.) Davis further argues that it was only after this illegal seizure occurred that Officer Obregon observed the baggie of suspected heroin that was thrown from the kitchen window. (Def.'s Mot. (dkt. #133) at 6.) Thus, according to Davis, because Officer Obregon's presence in the backyard was unlawfully obtained, i.e. because he was engaging an illegal seizure of the residence and its occupants at the time, the baggie of suspected heroin was not in "plain view."

The Supreme Court has defined a seizure in general terms as occurring when "by means of physical force or show of authority, [a person's] freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). The Court went on to establish the test for when a seizure occurs: "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554. However, as the Supreme

17

Court in *California v. Hodari D.* emphasized, when a seizure is effectuated through a show of authority rather than through any sort of application of physical force, there is no seizure until there is a submission to authority by the suspect; assertion of authority alone by the police is not enough. 499 U.S. 621, 629 (1991).

Turning to the facts of this case, the court notes that although the defendant asserts throughout his briefs that the *residence* located at 3369 N. Palmer Street was "seized" when the officers "surrounded" the residence, such is not the case. This is because a seizure of property only occurs when a governmental intrusion meaningfully interferes with an individual's possessory interest in the property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Furthermore, as aforementioned, a seizure does not occur until there is a *submission* to the show of authority by the individual; the assertion of authority alone by the police is not enough. *Hodari D.*, 499 U.S. at 629. And, here, before the individuals in the residence located at 3369 N. Palmer St. "submitted" to the show of authority by the officers located outside the residence, an individual threw the baggie of suspected heroin out the kitchen window. Such being the case, the individuals were not illegally "seized" prior to Officer Obregon's observation of the baggie of suspected heroin that was thrown from the kitchen window.

Consequently, and for all of the foregoing reasons, as well as for all of the reasons set forth in this court's April 16, 2007 Recommendation and Order, it will be recommended that Davis's motion to suppress the evidence seized during the search of 3369 N. Palmer Street be denied.

### III. RECOMMENDATION AND ORDERS

**NOW THEREFORE IT IS RECOMMENDED** that Davis's motion to dismiss Count Two (dkt. #127) be **DENIED**;

18

**IT IS FURTHER RECOMMENDED** that Davis's motion to suppress the evidence seized during the search of 3369 N. Palmer (dkt. #133) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Davis's motion to suppress Emeline White's statements (dkt. #131) be **DENIED AS MOOT**;

**NOW THEREFORE IT IS ORDERED** that Davis's motion for a bill of particulars (dkt. #122) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Davis's motion to disclose the identity of confidential informants (dkt. #123) be and hereby is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that the government disclose the identity of the confidential informants who will be called as witnesses during the government's case-in-chief no later than thirty (30) days prior to trial;

**IT IS FURTHER ORDERED** that Davis's motion to enlarge discovery and for additional time to file motions (dkt. #124) be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Davis's motion for informant's information (dkt. #125) be and hereby is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that the government disclose all impeachment material relating to any informant or witness in this action thirty (30) days prior to trial;

**IT IS FURTHER ORDERED** that Davis's motion for severance (dkt. #130) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Davis's motion for disclosure of certain evidence pursuant to Fed. R. Evid. 404(b) (dkt. #132) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the government provide Davis with notice of any uncharged misconduct evidence that the government intends to use pursuant to Fed. R. Evid. 404(b) at least thirty (30) days prior to trial;

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this 30th day of July, 2007, at Milwaukee, Wisconsin.


/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

20