UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                         Case No. 06-CR-215

TOMAINE DAVIS,

        Defendant.

_____

**ORDER**

On November 16, 2006, a grand jury sitting in the Eastern District of Wisconsin returned a four-count indictment charging Tomaine Davis and seven co-defendants with drug related offenses. Specifically, Davis is charged with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (count one); and knowingly and intentionally possessing cocaine base and marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (count two). Davis was arraigned on May 1, 2007, and he pled not guilty to both counts. On June 21, 2007, Davis filed several pretrial motions: he moved for a bill of particulars, for disclosure of confidential informants, promises or inducements to governmental witnesses, and *Santiago* proffers; he moved to dismiss count two of the indictment; he moved for severance from co-defendants; he moved for discovery of 404(b) evidence; and finally, he moved to suppress statements and evidence recovered from 3369 North Palmer Street. On

July 30, 2007, Magistrate Judge William E. Callahan, Jr. issued a report and recommendation that this court deny Davis' motion to sever, motion for a *Santiago* proffer, his motion for suppression of evidence; and that this court grant in part and deny in part Davis' motion for disclosure of confidential informants.[1]  Davis timely filed objections to the recommendation and the government has filed a response.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge may consider dispositive motions, such as motions to suppress, and issue recommendations to the district judge regarding the motions. *See id.* When a party objects to a magistrate's findings, the district court judge must make de novo determinations as to these findings. *See id.* § 636(b)(1)(C); *see also Delgado v. Bowen*, 782 F.2d 79 (7th Cir. 1986). The district court may adopt the recommendation in part or in its entirety and has the final authority of judgment in the case. *Delgado*, 782 F.2d at 82.  For the reasons set forth below, the court will adopt Magistrate Callahan's recommendation and deny Davis' motion to suppress.

---

[1]The magistrate also recommended that this court deny Davis' following filings: (1) his motion to dismiss count II of the indictment, (2) his motion to suppress statements, (3) his motion for a bill of particulars, and (4) his motion to enlarge discovery.  The magistrate recommended that this court grant in part and deny in part Davis' motion for informant's information; and the magistrate recommended that Davis' motion for disclosure of evidence pursuant to Rule 404(b) of the Federal Rules of Evidence.  Neither party objected to the magistrate's rulings on these filings, and pursuant to 28 U.S.C. § 636, the court will adopt the recommendation on these matters.

-2-

Case 2:06-cr-00215-JPS   Filed 11/26/07   Page 2 of 18   Document 157

**ANALYSIS**

Davis raises four objections to the magistrates's recommendation. First, Davis objects to the recommendation that the government is only required to disclose confidential informants intended to be called for trial. Second, Davis objects to the magistrate's order denying his motion to sever. Third, Davis objects to the magistrate's recommendation that his motion to suppress be denied. Finally, Davis renews his request for a *Santiago* proffer. The court will separately address each of his objections below.

**I.      Disclosure of Confidential Informants**

Davis moved for an order requiring the government to disclose the confidential informants' statements contained in certain parts of the discovery. Davis contends this information will lead to or provide exculpatory information showing that he was not involved in the conspiracy nor in the possession count. Davis made this request pursuant to *Roviaro v. United States*, 353 U.S. 53 (1957) and *Brady v. Maryland,* 373 U.S. 83 (1993). The government, noting the limited utility of this request, recommended that Davis' motion be denied. Magistrate Callahan granted in part and denied in part Davis' motion for disclosure; specifically, Magistrate Callahan ordered the government to disclose, no later than 30 days prior to the commencement of trial, the confidential informants it intends to call in its case-in-chief. Davis objected, arguing that *all* confidential informants should be disclosed.

As a general rule, the government enjoys a limited privilege of withholding the identity of an informant. *United States v. Bender,* 5 F.3d 267, 269 (7th Cir.1993). This "confidential informant privilege" protects from disclosure an informant's identity and his communications with the government that may tend to reveal his identity. *See id.* This privilege encourages citizens to perform their obligation to communicate their knowledge of the commission of crimes to law enforcement officials by preserving the informant's anonymity. *United States v. Jefferson,* 252 F.3d 937, 940 (7th Cir. 2001). Nevertheless, the government's privilege is not absolute. A defendant can overcome the confidential informant privilege by demonstrating a need for the information, but he bears this burden in the face of an assumption that the privilege should apply. *See Bender*, 5 F.3d at 270 (stating defense counsel must establish that the defendant "possesses a genuine need of informant disclosure that outweighs the public's interest"). The Supreme Court has held the a court must balance the defendant's request against the government's interest; particularly considering "the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors" in determining if ordering disclosure is appropriate. *Roviaro*, 353 U.S. at 62 (1957); *see also United States v. Valles*, 41 F.3d 355, 359 (7th Cir. 1994). A court should also consider the informant's role in the crime; that is, whether or not the informant was actively involved and was a "transactional witness" to the crimes and events, or if the informant was a mere "tipster." *Bender*, 5 F.3d at 270.

Recognizing that the offense charged is a drug related offense, the court notes that the government's interest in keeping the privilege is particularly high. The *Bender* court reasoned that "not many people want to become police informants in light of the violence within the drug subculture[;] [d]rug dealers are not known for treating informers with compassion." *Id.* Thus, the court notes at the outset that due to the nature of this case, a multi-defendant heroin conspiracy case, the government's interest in maintaining the confidentiality of the informants is strong and compelling.

Against this backdrop, the court finds the examples cited by Davis in support of disclosure of the confidential informants to be without merit. In his objection, Davis lists a number of informants that made statements in the discovery materials. (*See* Davis Obj. 2-4.) Several of the informants Davis lists do not reference Davis' name at all; these individuals are clearly not "transactional," and disclosure of their identity is not at all necessary. *See United States v. Andrus*, 775 F.2d 825, 842 (7th Cir. 1985) (holding that no disclosure was required of an informant who instigated investigation of defendant but was not present at transactions alleged in indictment). Additionally, the court finds that Davis' motion was properly denied because he did not set forth sufficient information or factors that would overcome the presumption that the government's privilege applies. Indeed, "[t]he confidential informant privileged will not yield to permit a mere fishing expedition, nor upon bare speculation that information may possibly prove useful." *Valles,* 41 F.3d at 358

-5-

Case 2:06-cr-00215-JPS   Filed 11/26/07   Page 5 of 18   Document 157

(quoting *Doles v. Local 1942, Int'l Bhd. of Elec. Workers*, 870 F.2d 368, 373 (7th Cir. 1989)).

In sum, Davis' exhibits actually belie his argument that the informants were transactional or closely-related informants and therefore must be disclosed. Based upon the paucity of information Davis has provided in an attempt to show that the informants were transactional witnesses, the court finds that he has not met his burden necessary to overcome the government's confidential informant privilege. Thus, the court is constrained to adopt the magistrate's order and deny Davis' motion to disclose confidential informants as he has not shown that disclosure would be "relevant and helpful" to his defense, nor that disclosure is "essential to a fair determination" of his case. *Jefferson*, 252 F.3d at 941 (2001). The court will deny Davis' motion for the disclosure of all confidential informants; however, the court will adopt Magistrate Callahan's recommendation and order the government to disclose prior to Davis' trial the identities of all informants it intends to call as witnesses.

## II.  Severance

Davis moved to sever his trial from the trial of his co-defendants. Davis moved to sever pursuant to *Oglesby v. United States*, 764 F.2d 1273, 1276 (7th Cir. 1985), suggesting three reasons that support severance. First, he argues antagonistic defenses would prevent a fair trial; second, he argues that the complexity and amount of evidence would be impossible for the jury to separate and consider as to each defendant, and third, the gross disparity of evidence amongst his co-defendants is prejudicial to him.

Rule 8 of the Federal Rules of Criminal Procedure allows for joinder of two or more defendants for the purposes of trial. There is a preference for joint trial when two or more defendants are indicted together, especially when the indictment charges a conspiracy which may be proven by evidence establishing one act or a series of acts. *United States v. Williams*, 31 F.3d 522, 528 (7th Cir.1994) (noting "the efficiencies involved in trying members of the same conspiracy together has led to the presumption in favor of a joint trial for co-conspirators").

However, despite Rule 8's directive, Rule 14 of the Federal Rules of Criminal Procedure states in pertinent part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed. R. Crim. P. 14(a) (2007). The Supreme Court has held that severance under Rule 14 is necessary only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Seventh Circuit has held that there is a strong public policy interest in having jointly indicted defendants tried together. *See United States v. Studley*, 892 F.2d 518, 523 (7th Cir. 1989) (noting joint trials "reduce the expenditure of the judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses; . . . and they reduce the chance that each

defendant will try to create a reasonable doubt by blaming an absent colleague.") (citing *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987). Furthermore, "[i]n all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006). Thus, motions to sever should be denied unless there appears a serious risk that "a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.*

In Davis' objection, he reiterates and clarifies his previously filed motion and maintains that his theory of defense is antagonistic to co-defendant Maurice Davis; that the complexity of the case and the disparity of the evidence would make it difficult for the jury to parse through and separate the testimony and evidence; and that he would be required to introduce evidence of his prior incarcerations to defend against the conspiracy.

When the court considers Davis' first ground for severance, that his theory of defense would be mutually antagonistic to co-defendant Maurice Davis, the court finds that he has not met the applicable stringent standard warranting severance. Davis' defense theory is that he is only included in the indictment due to his relationship with his brother, the alleged leader of the conspiracy. However, this theory is not antagonistic as the Seventh Circuit has defined; "mutually antagonistic

-8-

defenses mandate severance only if acceptance of one defendant's defense precludes the acquittal of another defendant." *United States v. Goodwin*, 496 F.3d 636, 644 (7th Cir. 2007). Here, if the jurors were to find that Davis was only joined due to his relationship with Maurice Davis, that in itself would not preclude the jurors from finding that Maurice Davis was not involved in the conspiracy or guilty of the charges in the indictment. *See id.*

The court also does not find that severance should be granted due to the complexity of the case, the massive amount of evidence, nor the potential disparity in the various categories of evidence. The Seventh Circuit has noted that prejudice could arise if there is a gross disparity of evidence between the defendants or if there is a massive and complex amount of evidence that makes it almost impossible for the jury to separate evidence as to each defendant. *See United States v. Oglesby*, 764 F.2d 1273, 1276 (7th Cir. 1985). However, a key consideration for the court in adjudicating severance motions is whether or not proper limiting instructions to a jury would sufficiently assure that the jury could separately consider and reach different conclusions in regards to all of the defendants. *See United States v. Smith*, 995 F.2d 662, 671 (7th Cir. 1993). The court is confident that proper limiting instructions will resolve any potential problems with the complexity or amount of evidence; juries are presumed to be capable of following limiting instructions given by the court and reaching separate conclusions as to each defendant. *See United States v. Briscoe*, 896 F.2d 1476, 1517 (7th Cir. 1990).

Additionally, it is not sufficient for defendants to simply note that there is a great disparity of evidence between different co-defendants as this will not establish the necessary prejudice to warrant severance. *See United States v. Headman*, 630 F.2d 1184, 1200 (7th Cir. 1980). Davis merely notes that a majority of the evidence in the case does not pertain to him, however, this alone cannot warrant severance. *See United States v. Diaz*, 876 F.2d 1344, 1357-58 (noting that "the fact that the evidence against co-defendants might have been proportionally greater than the evidence against him is not itself grounds for severance") (citing *Untied States v. Hendrix,* 752 F.2d 1226, 1232 (7th Cir. 1985).

Lastly, the court does not find Davis' argument that he would have to forgo his Fifth Amendment right to remain silent and not have his prior convictions used against him in order to defend against the conspiracy charge. The government charges that the conspiracy began in December 2004 and ended on September 12, 2006. Davis maintains that he was incarcerated for significant and relevant periods of this time frame and therefore could not have been involved as the government charges. Davis' argument is without merit. To begin, his periods of incarceration are somewhat inconsequential with respect to defending against the conspiracy. He was incarcerated from November 2002 through May 2004, a time frame entirely outside of the alleged conspiracy. Next, he argues that his two-day period of incarceration from May 17, 2005 through May 19, 2005 and three-month period of incarceration from May 4, 2006 through August 21, 2006 took him out of the conspiracy during

-10-

those relevant time periods. However, it is well-established that a defendant may leave and re-join a conspiracy without terminating his involvement with it on the whole. *See, e.g. United States v. Shorter,* 54 F.3d 1248, 1254-55 (7th Cir. 1995). Additionally, these are relatively short periods of time when the court considers the length of the overall conspiracy. Thus, in the court's view, this argument provides no basis for granting severance.

In sum, Davis has not met the "heavy burden" of demonstrating that the prejudice he would potentially suffer outweighs the convenience and public interest of a joint trial. *See United States v. Best*, 235 F. Supp. 2d 923, 927-28 (N.D. Ind. 2002). Accordingly, the court is constrained to adopt the magistrate's recommendation at this ground and deny Davis' motion for severance.

### III. Suppression of Evidence

Davis moved to suppress all evidence seized from a May 17, 2005 search of the residence located at 3369 North Palmer Street. He argues that the police illegally seized evidence from his person and the residence, and urges that this evidence must be suppressed. Magistrate Callahan recommended that his motion be denied, and Davis now objects. Davis' co-defendant Lawrence Butler similarly argued that the evidence obtained must be suppressed, and with the government, Butler submitted stipulated facts regarding the May 17, 2005 search of 3369 North Palmer Street. The following is a brief summary of the facts, which were also set forth in the court's order denying Butler's motion to suppress evidence. (*See* August 1, 2007 Order, Docket # 139).

On May 17, 2005, members of the Milwaukee Police Department were investigating a tip they received from a confidential informant that the person in control of the residence at 3369 North Palmer Street in Milwaukee, Wisconsin was operating a heroin house. The informant stated they believed this residence to be a heroin house because they had recently observed a large quantity of heroin, both packaged and unpackaged, inside the residence. Upon receiving this information, officers of the Milwaukee Police Department went to the Palmer Street residence at approximately 2:05 p.m. on the same day.

When the officers arrived at the residence, they surrounded the home and were positioned at various locations around the house. Officer Thomas Obergon was stationed at the rear and Officer Michael Lutz pounded loudly on the front door, displayed his badge, and demanded that the occupants open the door. After Lutz began knocking on the door, Obergon observed a black male throw a sandwich bag, containing a powdery tan substance, out of the window. Obergon picked up the sandwich bag and examined it; he believed the substance to be consistent with heroin. Obergon communicated this to the officers stationed in the front of the residence.

After the sandwich bag was thrown out of the window, the officers believed that the individuals inside may be destroying evidence and therefore made a warrantless entry through the front door and conducted a protective sweep of the premises. All persons found in the residence during the protective sweep, including Davis, were ordered to the floor and detained.

While the individuals were detained on the scene, the officers called in vice-squad officer Dean Newport to conduct a field test on the substance found in the sandwich bag. Newport's test indicated that the substance was positive for heroin. With this information, Lutz went to the Milwaukee County District Attorney's Office and drafted an application and affidavit for a search warrant of 3369 North Palmer Street. A warrant was issued and the same day, Lutz returned to the Palmer Street address to search. During the search, numerous items of evidentiary value were recovered, including bindles of heroin, drug packaging materials, $349.00 in cash and cellular telephones.

As referenced above, the court has already resolved the legal and factual considerations attendant to this search, resulting in denial of a co-defendant's objection to this search. Davis now requests that the court revisit its decision regarding whether or not there was reasonable suspicion for the officers to conduct the "knock and talk." Davis argues that the informant's tip did not "amount to reasonable suspicion to seize Tomaine Davis." (Davis' Obj. 8.) In adjudicating his motion, the court need only focus on whether or not the informant's tip supplied reasonable suspicion to conduct a "knock and talk" or investigatory stop.

As the court previously explained in the order denying co-defendant Lawrence Butler's motion to suppress, the officers did not commit a Fourth Amendment violation in obtaining the evidence in this case. Under the facts set forth above, the court determined that the officers were legitimately in the yard under two

-13-

circumstances: first, the defendants were unable to establish that the common backyard area of the home constituted "curtilage" and privacy protections; and second, the officers were otherwise legitimately located at the residence because the informant's tip established the requisite reasonable suspicion to perform the "knock and talk" investigation. Davis' objection does not suggest that there was any curtilage invasion in the officers' location in the backyard, obviating any necessity to revisit these arguments. However, Davis does argue that the officers lacked reasonable suspicion as it pertained to him and the "knock and talk" investigation.

Davis contends that the informant providing the tip that the individuals residing at 3369 North Palmer Street were operating a heroin house did not have the requisite indicia to form a basis of reasonable suspicion. He argues that upon information and belief, the informant was a criminal in custody and a co-conspirator in this case, and that his statements are inherently unreliable. Davis also argues that the tip provided by the informant was lacking in details and corroboration, and because the informant was similarly facing criminal charges, it should be assessed the same scrutiny as an anonymous tipster. (Davis' Obj. 8.) Citing to *Lilly v. Virginia*, 527 U.S. 116 (1999), Davis further argues that the statements should be considered "inherently unreliable" because the Supreme Court has previously held statements in similar situations "inherently suspect." (*See id.)* Davis' co-defendant Butler previously filed stipulated facts regarding the search of the residence, and because Davis is challenging the same search, the court will once again rely on them in assessing his challenge. (See Stipulated Facts, Docket # 79.)

-14-
Case 2:06-cr-00215-JPS   Filed 11/26/07   Page 14 of 18   Document 157

The court finds that the informant's tip did provide reasonable suspicion to conduct the "knock and talk". As previously noted, this tip did supply the requisite reasonable suspicion to conduct the "knock and talk." "Reasonable suspicion" is "more than an inchoate and un-particularized suspicion or hunch," and determining whether or not reasonable suspicion existed involves examining the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). The informant was able to provide an address and was able to detail the specific crimes, in addition to the fact that they had been personally observed by the informant. Furthermore, Davis suggests that the informant's statements to the officers were given immediately prior to the investigation, and this fact actually bolsters the reliability of the statement as it demonstrates recency. Finally, the court finds that it is inappropriate to consider Davis' assertions beyond the record before the court and evaluate the informant as an "anonymous tipster."

Equally important, Davis' reliance on *Lilly* is misplaced. In *Lilly*, the Supreme Court held that the admission of non-testifying accomplice's confession violated defendant's Confrontation Clause rights. *Lilly*, 527 U.S. at 120. Although Davis correctly cites the Court's language that it is statements are presumptively unreliable when "one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another"; this statement was in reference to a defendant's Confrontation Clause rights, not in relation to an assessment of the

-15-

reasonable suspicion of an informant's statements. Moreover, the court finds that as to Davis, there was reasonable suspicion to perform the "knock and talk" investigation. Although reasonable suspicion is more than a "mere hunch," it does not need to rise to the level of a probable cause finding. *United States v. LePage*, 477 F.3d 485, 487 (7th Cir. 2007). A court must consider whether or not the individual providing the information is anonymous, in addition to examining the amount of information given and its reliability. *See United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003). Here, the informant was not an anonymous tipster; the information provided to the officers was fairly detailed; and the observations the informant made were recent. Therefore, the court determines that these combined factors form a finding of reasonable suspicion. Accordingly, the officers could lawfully perform the "knock and talk" investigation and they used legitimately seized information to obtain and execute the subsequent warrant; the court is therefore constrained to deny Davis' motion to suppress.

## IV. *Santiago* Proffer

Davis moved the court for an order requiring the government to file a *Santiago* proffer to establish the admissibility of any co-conspirator statements that the government intends to introduce at trial. *See United States v. Santiago,* 582 F.2d 1128, 1134-35 (7th Cir. 1978), *overruled on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987). In accordance with *Santiago*, the Seventh Circuit has further established that such statements are admissible if the government shows:

-16-

(1) that a conspiracy existed; (2) that the defendant and the individual making the statements were members of the conspiracy; and (3) that the statements were made in the furtherance of the conspiracy. *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1994) (citing *Santiago*, 582 F.2d at 1134-35). *Cox* also set forth several procedures a court could employ in making the admissibility determinations, such as requiring the government to file a proffer before trial; conducting a hearing on the matter; or in the absence of a pretrial proffer, the court may conditionally admit testimony subject to the government's eventual proof of the three foundational elements noted above. *See Cox*, 923 F.2d at 526. In this branch of the court, the standard practice is the latter; that is, the court does not require the government to file *Santiago* proffers in advance of the trial. The court finds that it is more appropriate to conditionally admit statements, subject to the government showing that they are admissible in accordance with the *Santiago* considerations. For this reason, the court will deny without prejudice Davis' motion for a *Santiago* proffer.

Accordingly,

**IT IS ORDERED** that Magistrate Judge Callahan's Recommendation be and the same is hereby **ADOPTED;**

**IT IS FURTHER ORDERED** that Davis' motion to disclose confidential informants [Docket # 123] be and the same is hereby **GRANTED** in part and **DENIED** in part;

-17-

**IT IS FURTHER ORDERED** that Davis' motion to sever [Docket # 130] be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Davis' motion to suppress evidence [Docket # 133] be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Davis' motion for a *Santiago* proffer [Docket # 129] be and the same is hereby **DENIED** without prejudice.

Dated at Milwaukee, Wisconsin on November 26, 2007.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge